UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


CHRISTOPHER THORNE

     v.                                     Case No. 3:09cv1716 (SRU)

DR. FRANKIE CUEVAS, ET AL.


**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The plaintiff Christopher Thorne, currently confined at the Cheshire Correctional

Institution in Cheshire, Connecticut, ("Cheshire") commenced this civil rights action *pro se*

pursuant to 28 U.S.C. § 1915.  The plaintiff alleges that the defendants were deliberately

indifferent to his serious dental needs from August 2007 through January 2008.  The defendants

have moved for summary judgment.  For the reasons that follow, the motion is granted in part

and denied in part.

I.      **Standard of Review**

With a motion for summary judgment, the burden is on the moving party to establish that

there are no genuine issues of material fact in dispute and that it is entitled to judgment as a

matter of law.  *See* Rule 56(c),  Fed. R. Civ. P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

256 (1986).  The moving party may satisfy this burden by demonstrating the lack of evidence to

support the nonmoving party's case.  *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir.

2002) (per curiam).

"Summary judgment is appropriate where, construing all evidence in the light most

favorable to the non-moving party," *Pabon v. Wright*, 459 F.3d 241, 247 (2d Cir. 2006), "the

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c)(2).  An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it.  *Anderson*, 477 U.S. at 248. "Unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or present mere speculation or conjecture. *See Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (quotations and citations omitted). The mere of existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him. *See Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004).

The court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party. *See Patterson v. County of Oneida*, 375 F.3d 206, 218 (2d Cir. 2004). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Where one party is proceeding *pro se*, the court reads the *pro se* party's papers liberally and interprets them to raise the strongest arguments suggested therein. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Despite this liberal interpretation, however, an unsupported assertion cannot overcome a properly supported motion for summary judgment. *Carey v.*

2

*Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## II.     Facts[1]

The plaintiff has been confined to the custody of the State of Connecticut Department of Correction since January 29, 2003.  On October 19, 2004, a judge in the Connecticut Superior Court for the Judicial District of Waterbury, sentenced the plaintiff to twenty-three years of imprisonment.   At that time, the plaintiff was incarcerated at Cheshire.  On October 5, 2005, prison officials at Cheshire transferred the plaintiff to Northern Correctional Institution in Somers, Connecticut ("Northern").  The plaintiff remained at Northern until September 9, 2008, when prison officials transferred him to Corrigan-Radgowski Correctional Institution in Uncasville, Connecticut.

On May 2, 2007, the plaintiff complained of pain in and around tooth number seventeen, a wisdom tooth, located on the lower left hand side of his jaw.  A dentist examined the plaintiff and found that the tooth was impacted[2] and the roots of the tooth involved the left mandibular nerve.  Tooth number sixteen, also a wisdom tooth, had erupted and was striking the gum tissue on top of tooth number seventeen.  The dentist reduced the cusps of teeth numbers fifteen, sixteen and one to alleviate the plaintiff's pain and prescribed an antibiotic.

On June 13, 2007, the plaintiff complained of pain in the area of tooth number seventeen. The dentist noted that the plaintiff had experienced pain and swelling in the area of tooth number seventeen on several occasions in the past.  She diagnosed the plaintiff as suffering from

---

[1] The facts are taken from defendant's Local Rule 56(a)1 Statement along with the attached exhibits and affidavits and the plaintiff's Local Rule 56(a)2 Statement and affidavit and attached exhibits (*See* Docs. Nos. 29-2 through 29-13, 33-3 and 33-4.)

[2] An impacted tooth is one that has not erupted by pushing through the gum into the normal upright position.

Pericoronitis, an inflammation of the gum tissues around the crown of tooth number seventeen. The dentist prescribed an antibiotic to treat infection and medication to treat the plaintiff's pain.

Dr. Cuevas is a dentist licensed to practice dentistry in the State of Connecticut and is employed by the University of Connecticut Correctional Managed Health Care ("CMCHC"), the entity that provides medical, dental and mental health services to inmates under the custody of the State of Connecticut Department of Correction. Dr. Cuevas was stationed at Northern from at least August 2007 through January 2008.

On August 14, 2007, Dr. Cuevas examined the plaintiff due to his complaints of pain and swelling in the area near tooth number seventeen. Dr. Cuevas diagnosed the plaintiff as suffering from recurrent Pericoronitis and recommended that tooth number seventeen and tooth number sixteen, which is the tooth on the upper jaw opposite tooth number seventeen, be extracted. Dr. Cuevas referred the plaintiff to an oral surgeon to confirm the need for the extractions. On August 15, 2007, Dr. Dupont evaluated the plaintiff and agreed that both tooth number sixteen and tooth number seventeen needed to be extracted by a surgeon. Dr. Dupont requested that the plaintiff be referred to the University of Connecticut Health Center - John Dempsey Hospital ("UCONN") for surgical extraction of teeth numbers sixteen and seventeen.

Later that day, Dr. Cuevas prepared and submitted a request to the Utilization Review Committee ("URC") asking that the plaintiff be referred to an oral surgeon at UCONN for extraction of tooth number sixteen and tooth number seventeen. On August 17, 2007, Dr. Toro, the Dental Services Coordinator, approved the extraction of tooth number sixteen and tooth number seventeen by an Oral and Maxillofacial Surgeon. Dr. Cuevas reviewed the URC decision with the plaintiff on August 21, 2007.

On November 15, 2007, prison staff transported the plaintiff to UCONN for a 9:00 a.m. appointment to have tooth number sixteen and tooth number seventeen extracted by an oral surgeon.  No one at UCONN extracted the plaintiff's teeth on November 15, 2007.   Prison staff transported the plaintiff back to Northern at the end of the day.

Earlier on November 15, 2007, Dr. Carson Wright, a medical doctor practicing at Northern, entered an order for 800 milligrams of Motrin to be taken by the plaintiff for pain for five days.  Dr. Wright prescribed the medication in anticipation of the pain that he thought the plaintiff would be experiencing upon his return from UCONN after the surgical extractions of two of the plaintiff's wisdom teeth.

Later on November 15, 2007, an unknown individual submitted a request for follow-up oral surgery to extract tooth number sixteen and tooth number seventeen under local anaesthesia. The request also referred to the extraction of tooth number twelve.  On November 19, 2007, Dr. Toro confirmed approval for the extractions of teeth numbers sixteen and seventeen, but not for the extraction of tooth number twelve.

After November 15, 2007, the plaintiff complained to Nurses Sanders and Gilbert on a repeated basis about his tooth and gum pain and his difficulties with eating due to swelling and gum pain.  On December 20, 2007, Dr. Wright examined the plaintiff due to his complaints of tooth pain.   He reviewed the URC decision of August 19, 2007, with the plaintiff and prescribed 800 milligrams of Motrin to be taken three times a day for three weeks and an antibiotic to be taken for ten days.

On December 26, 2007, Dr. Cuevas met with the plaintiff due to his complaints of tooth and gum pain, swollen gums and difficulty eating .  The plaintiff requested that he be placed on a

pureed/soft diet.  Dr. Cuevas consulted with Dr.  Wright regarding the diet.  Dr. Wright approved

of the recommendation to place the plaintiff on a pureed diet.  Dr. Cuevas submitted a

Therapeutic Diet Request to the Food Services Department at Northern later that day.  The

plaintiff remained on this diet for approximately three weeks.

On January 17, 2008, correctional staff transported the plaintiff to UCONN.   A surgeon

supervised by Dr. Shafer extracted teeth numbers sixteen and seventeen.  After the surgery, Dr.

Shafer prescribed Percocet and Ibuprofen to be taken by the plaintiff as needed for pain.

On January 17, 2008, after the plaintiff returned to Northern, Nurse Sanders called Dr.

Pillai because there was not Percocet or Ibuprofen available to give to the plaintiff.  Dr. Pillai

entered an order for Tylenol #3, which is Tylenol and Codeine, and 800 milligrams of Motrin to

be given to the plaintiff for five days.

Wendy Sanders is a registered nurse licensed to practice in the State of Connecticut.  She

is not a physician or a dentist.   Cynthia Gilbert is a registered nurse, but is not a physician or a

dentist.

## III.    Discussion

The plaintiff contends that during the period from May 2007 through January 2008, he

suffered from a serious dental condition.  He argues that the defendants were aware of this dental

condition and were deliberately indifferent to this need.  The defendants argue that they were not

deliberately indifferent to the plaintiff's dental needs and that Warden McGill and Deputy

Warden Light were not involved in the alleged deliberate indifference to the plaintiff's dental

needs.

### A.     Defendants Pillai and Newitter

In his memorandum in opposition to the motion for summary judgment, the plaintiff states that he no longer wishes to pursue his claims against Drs. Pillai and Newitter.  He does not object to summary judgment being granted in their favor.  Accordingly, the motion for summary judgment is granted with respect to all claims against defendants Pillai and Newitter.

**B.      Nurse Schreindorfer**

On March 2, 2011, the defendants filed a suggestion of death on the record indicating that Cheryl A. Schreindorfer had died during the pendency of this action.  *See* [Doc. No. 27]. Rule 25(a), Fed. R. Civ. P., provides: "If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. . . . Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death . . . the action shall be dismissed as to the deceased party."  There is no requirement that the statement of fact of death of a party be filed by a party or the formal or appointed representative of the decedent's estate or that the statement identify the successor or legal representative of the decedent.  *See Uincorn Tales, Inc. v. Banerjee*, 138 F.3d 467, 469-70 (2d Cir. 1998).

A review of the court file reveals that the court granted the plaintiff an extension until July 15, 2011, to file a motion for substitution of parties.  To date, no motion for substitution of parties has been filed.  Because more than ninety days have passed since the filing of the suggestion of death upon the record, the case is dismissed with respect to defendant Cheryl A. Schreindorfer pursuant to Rule 25(a), Fed. R. Civ. P.

**C.      Personal Involvement**

Defendants Warden McGill and Deputy Warden Light argue that the claims against them

should be dismissed because the plaintiff has not alleged their personal involvement in the alleged deliberate indifference to his dental needs.   The plaintiff contends that he has alleged sufficient involvement on the part of both defendants.

To recover money damages under section 1983, plaintiff must show that these defendants were personally involved in the constitutional violations. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  Defendants McGill and Light are supervisory officials.  They cannot be held liable under section 1983 solely for the acts of their subordinates. *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

The plaintiff may show supervisory liability by demonstrating one or more of the following criteria: (1) the defendant actually and directly participated in the alleged unconstitutional acts; (2) the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) the defendant created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) the defendant was grossly negligent in supervising the correctional officers who committed the constitutional violation; and (5) the defendant failed to take action in response to information regarding the occurrence of unconstitutional conduct. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).  In addition, plaintiff must demonstrate an affirmative causal link between the inaction of the supervisory official and his injury. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), the Supreme Court found that a supervisor can be held liable only "through the official's own individual actions."  129 S. Ct. at 1948.  That decision arguably casts doubt on the continued viability of some of the categories for

supervisory liability.  The Second Circuit, however, has not revisited the criteria for supervisory liability following *Iqbal*.  *See DeJesus v. Albright*, No. 08 Civ. 5804 (DLC), 2011 WL 814838, at *6 n. 4 (S.D.N.Y. Mar. 9, 2011).  Because it is unclear whether *Iqbal* overrules or limits *Colon* the court will continue to apply the categories for supervisory liability set forth in *Colon*.

The plaintiff alleges that, after he returned from UCONN on November 15, 2007, he was in severe pain and sent inmate requests to defendants McGill and Light regarding the failure of the medical staff to respond to his complaints of tooth pain.  They did not respond to these requests. The plaintiff also alleges that on an unknown date after November 15, 2007, defendants McGill and Light toured his housing unit.  During the unit tour, defendants McGill and Light stopped by the plaintiff's cell and he informed them about his dental problems and lack of dental treatment.

The fact that a prisoner sent a letter or written request to a supervisory official does not establish the requisite personal involvement of the supervisory official.  *See Rivera v. Fischer*, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) ("Numerous courts have held that merely writing a letter of complaint does not provide personal involvement necessary to maintain a § 1983 claim.") (quoting *Candelaria v. Higley*, No. 04-CV-277, 2008 WL 478408, at *2 (W.D.N.Y. Feb. 19, 2008) (citing cases).  Furthermore, the law is well established, that "a failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim."  *Swift v. Tweddell*, 582 F. Supp. 2d 437, 445-46 (W.D.N.Y. 2008) (citing cases).  Thus, a supervisory official's mere receipt of a letter complaining about unconstitutional conduct is not enough to give rise to personal involvement on the part of the official.  *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (prison official who received letter from inmate and forwarded it to

9

subordinate for investigation and response was not personally involved in depriving inmate of constitutional right); *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 322 (W.D.N.Y. 2007) (allegation that defendant did not respond to inmate's letters alleging lack of medical attention was not enough to establish defendant's personal involvement in alleged violations); *Smart v. Goord*, 441 F. Supp. 2d 631, 642-43 (S.D.N.Y. 2006) (failure of supervisory prison official to take action in response to letters complaining of unconstitutional conduct is insufficient to demonstrate personal involvement).

Warden McGill and Deputy Warden Light aver that they have not been trained in dentistry and did not schedule dental appointments or respond to dental grievances at Northern during the time period in question.  Furthermore, they had no involvement in the plaintiff's dental treatment and had no recollection of the plaintiff ever contacting them in person or in writing about his dental treatment or problems.  They also aver that had the plaintiff contacted them, they would have forwarded his request or concern to the dental staff.

The fact that defendants Light and McGill may have failed to respond to plaintiff's Inmate Request Forms is insufficient to demonstrate the personal involvement of these defendants in the alleged deliberate indifference to his dental needs.  *See Rivera*, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009).   In addition, the plaintiff's unsupported allegation that he spoke to Warden McGill and Deputy Warden Light about his dental treatment on an unknown date and they allegedly took no action in response to this information is insufficient to establish their personal involvement in the alleged delay in the extraction of his two wisdom teeth.  *See Lewis v. Cunningham*, No. 05 Civ. 9243 (GBD)(RLE), 2011 WL 1219287, *7 (S.D.N.Y. March 14, 2011) ("A high ranking official's inaction is, by itself, insufficient to satisfy the requirement of personal

involvement, especially when plaintiff's claims involve medical concerns that may be appropriately delegated to medical staff.").

The motion for summary judgment is granted with respect to the claims against Warden McGill and Deputy Warden Light on the ground that the plaintiff failed to present sufficient evidence of their personal involvement in the alleged deliberate indifference to his dental needs.

### D.      Deliberate Indifference to Medical Needs

Defendants Wright, Cuevas, Shafer, Sanders and Gilbert contend that the plaintiff has not alleged or provided evidence to suggest that they were deliberately indifferent to his serious dental needs.  The Supreme Court has held that deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  To prevail on such a claim, a plaintiff must provide evidence of sufficiently harmful acts or omissions and intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel.  *See id.* at 104-06.  Mere negligence will not support a section 1983 claim; "the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law."  *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).  Thus, "not every lapse in prison medical care will rise to the level of a constitutional violation," *id.*; rather, the conduct complained of must "shock the conscience" or constitute a "barbarous act."  *McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864 (2d Cir. 1970)).

There are both subjective and objective components to the deliberate indifference

standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied sub nom. Foote v. Hathaway*, 513 U.S. 1154 (1995). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must produce death, degeneration or extreme pain. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). Thus, the fact that a prison official did not alleviate a significant risk that he should have but did not perceive does not constitute deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 834, 838 (1994).

The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition. For example, a medical condition significantly affecting the inmate's daily activities or causing chronic and significant pain or the existence of an injury a reasonable doctor would find important constitutes a serious medical need. *See Chance*, 143 F.3d at 702. In addition, where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious. *See Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000).

The second prong of deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." *Chance*, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104. A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference. *Chance*, 143 F.3d at 703. "Nor does

the fact that an inmate feels that he did not get the level of medical attention he deserved, or that he might prefer an alternative treatment, support a constitutional claim." *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)).

The deliberate indifference standard set forth in *Estelle* applies to claims of denials or delays in treatment of dental needs. *See Chance*, 143 F. 3d at 702 (deliberate indifference to medical needs standard applicable to claim that prison dentists failed to properly treat severe tooth decay); *Harrison v. Barkley*, 219 F. 3d 132, 136-37 (2d Cir. 2000) (applying deliberate indifference standard in *Estelle* to claim of untreated tooth cavity). Thus, deliberate indifference by prison officials to an inmate's serious dental needs constitutes cruel and unusual punishment in violation of the Eighth Amendment.

The defendants do not contest the fact that the plaintiff suffered from a serious dental need. In June 2007, the plaintiff complained of pain in area of his lower left wisdom tooth. At that time, a dentist had diagnosed the plaintiff as suffering from Pericoronitis, an infection of the gum around wisdom tooth number seventeen and noted that there had been pain and swelling in the past on several occasions. She prescribed pain medication and an antibiotic to treat the infection.

On August 14, 2007, Dr. Cuevas examined the plaintiff due to his complaints of pain and swelling in the area near wisdom tooth number seventeen. Dr. Cuevas diagnosed the plaintiff with recurrent Pericoronitis and recommended the extraction of tooth number seventeen and tooth number sixteen which is the tooth on the upper jaw that is opposite tooth number seventeen. An oral surgeon agreed with that recommendation. *See Harrison*, 219 F.3d at 137 (a

13

tooth cavity is a serious medical condition, not because cavities are always painful or otherwise

dangerous, but because a cavity that is not treated is likely to become so); *Chance*, 143 F.3d at

702-03 (where the denial of dental treatment for a dental condition causes great pain for at least

six months, the inability to properly chew, deterioration of additional teeth, resulting in the need

to extract teeth, the condition is sufficiently serious as to be one of urgency); *Mosby v. Cavey*,

686 F. Supp. 868, 875 (W.D. Wis. 2010) (impacted wisdom tooth that caused pain and difficulty

eating and required treatment by dentists and pain medication presented objectively serious

dental need).   Thus, the court concludes that there is no dispute that the plaintiff suffered from a

serious dental need from May 2007 to January 2008.

The defendants argue, however, that even though the plaintiff suffered from a serious

dental need, they were not deliberately indifferent to that need.   The defendants contend that they

treated his complaints of pain seriously and that the extraction of the plaintiff's wisdom teeth was

not unnecessarily delayed.

### 1.      Defendants Gilbert and Sanders

The plaintiff claims that he complained of the pain in his teeth on a routine basis

whenever Nurses Sanders and Gilbert were in the housing unit passing out medication.   He

asserts that they failed to take any action in response to his complaints of pain and his claims that

he could not eat due to gum pain.

With regard to Nurse Sanders, the plaintiff avers that after he returned from UCONN on

November 15, 2007, he repeatedly informed her of his gum and tooth pain and his inability to

eat.   According to plaintiff, Nurse Sanders would tell the plaintiff that she had no time for his

complaints.   On December 20, 2007, the plaintiff submitted a health grievance claiming that he

was in excruciating pain.   Dr. Wright examined the plaintiff on December 20, 2007 and

prescribed him pain medication as well as an antibiotic to treat infection.   On December 21,

2007, Nurse Sanders denied the plaintiff's grievance because the plaintiff had been treated by Dr.

Wright and he was awaiting the extractions of his two wisdom teeth.

On January 17, 2008, a surgeon at UCONN extracted the plaintiff's two wisdom teeth.

Before the plaintiff's return to Northern that day, Dr. Shafer prescribed Percocet and Ibuprofen to

be taken by the plaintiff as needed for pain.

Upon the plaintiff's return to Northern, Nurse Sanders called Dr. Pillai because there was

no Percocet or Ibuprofen available at Northern to give to the plaintiff.   Dr. Pillai entered an order

for Tylenol #3, which is Tylenol and Codeine, and 800 milligrams of Motrin to be given to the

plaintiff for five days.   Dr. Pillai avers that the two medications together are as effective as

Percocet and Ibuprofen.

Nurse Sanders' Affidavit only refers to prescriptions for pain issued by the surgeon who

extracted the plaintiff's molars on January 17, 2008.   She states that she is not a dentist and had

no authority to change the orders issued by physicians or to order a different prescription for pain

medication.   She asserts that no physician ever informed her that the plaintiff needed a different

pain medication or that his pain medication was at any time inappropriate.   Nurse Gilbert avers

that no physician ever informed her that the plaintiff needed a different pain medication or that

his pain medication was at any time inappropriate.   In addition, she states that she treated the

plaintiff to the best of her ability and took his complaints seriously.

Nurse Sanders' response to the plaintiff's grievance does not constitute deliberate

indifference to his serious medical needs.   In addition, the fact that Nurse Sanders did not

15

provide the plaintiff with Perocet after the extraction of his two wisdom teeth on January 17, 2008 does not constitute deliberate indifference.  She has averred that she contacted Dr. Pillai because Northern's medical department does not stock Percocet or Ibuprofen.  Pursuant to the orders of Dr. Pillai, Nurse Sanders provided the plaintiff with Tylenol with Codeine and Motrin. Nurse Sanders is not a dentist and did not have authority to change the prescription issued by Dr. Pillai or to order different medications.   Thus, the court concludes that Nurse Sanders was not deliberately indifferent to the plaintiff's dental condition after the surgical extraction of his two wisdom teeth on January 17, 2008.  *See Smith v. Woods*, 9:05–CV–1439 (LEK/DEP), 2008 WL 788573 at *9 & n. 7 (N.D.N.Y. Mar. 20, 2008) (social worker and psychologist in prison had no authority to override the decision of the treating psychiatrist regarding appropriate medication for an inmate/patient and could not be liable for deliberate indifference with respect to that decision).

Nurse Sanders has not addressed the plaintiff's allegations that in response to his repeated complaints of  pain in his teeth and an inability to eat, she told the plaintiff that she did not have the time to consider his complaints.  The plaintiff asserts that he also informed Nurse Gilbert of his gum and tooth pain and his inability to eat on a repeated basis.   Although, Nurse Gilbert would come to his cell and listen to his complaints, she took no further action.  Nurse Gilbert does not deny that the plaintiff made repeated complaints to her about his tooth pain and inability to eat.

At the time the plaintiff claims he complained to Nurses Sanders and Gilbert regarding his tooth and gum pain, prior to December 20, 2007, the plaintiff had not been prescribed any pain medication. Although Nurses Sanders and Gilbert may not have been able to prescribe medication, they do not explain why they could not have referred the plaintiff for an appointment

to see a physician or dentist. Thus, there is an issue of material fact whether Nurses Sanders and Gilbert were deliberately indifferent to the plaintiff's serious dental needs medications. *See* Mosby, 686 F. Supp. at 877-78 (genuine issue of material fact whether the nurses' failure to schedule plaintiff to see dentists or consult with dentists regarding the plaintiff's complaints of extreme pain due to an impacted wisdom tooth constituted deliberate indifference to plaintiff's serious dental condition). The Motion for Summary Judgment is denied with respect to defendants Sanders and Gilbert.

### 2.    Defendant Wright

The plaintiff asserts that Dr. Wright evaluated him on December 20, 2007, and was surprised to find that his wisdom teeth had not been extracted. In anticipation of the extraction of the plaintiff's wisdom teeth at UCONN on November 15, 2007, Dr. Wright had prescribed pain medication that day to be given to the plaintiff on his return from UCONN.

On December 20, 2007, Dr. Wright examined the plaintiff in response to his complaints of tooth pain. At that time, Dr. Wright informed the plaintiff of the Utilization Review Committee's decision approving his return to UCONN for surgical extraction of the two wisdom teeth. Dr. Wright also prescribed the plaintiff pain medication and an antibiotic to treat the infection in the plaintiff's teeth and gums.

Dr. Wright has averred that he is not a dentist and was not involved in scheduling dental procedures at UCONN. Thus, he had no role in the timing of the extraction of the plaintiff's wisdom teeth. The plaintiff has submitted no evidence to demonstrate that Dr. Wright was responsible for or had the authority to schedule the extractions of his teeth at UCONN.

The plaintiff alleges that during his examination on December 20, 2007, Dr. Wright

informed him that he would order a pureed or soft diet for him because of his complaints that he was unable to eat other hard foods.  Later on December 20, 2007, the plaintiff submitted an Inmate Request Form indicating that the correctional officers had served him what they described as a soft diet meal, but that he was unable to eat the food items on his tray.  He asked that he be switched to a liquid diet.  On December 23, 2007, in response to the request, an unidentified individual informed the plaintiff that no therapeutic diet had been prescribed for him.  Later that day, the plaintiff filed a grievance seeking to be placed on a liquid diet.   Nurse Schreindorfer rejected the grievance because it was not on a grievance form.

On December 26, 2007, Dr. Cuevas examined the plaintiff and consulted with Dr. Wright about whether the plaintiff needed a soft or pureed food diet.  Dr. Wright agreed and Dr. Cuevas submitted a request that the plaintiff receive such a diet.  The plaintiff claims that Dr. Wright was deliberately indifferent to his dental needs because he neglected to order the pureed/soft food diet on December 20, 2007.

Dr. Wright avers that his notes documenting his examination and treatment of the plaintiff on December 20, 2007, do not mention an order for a pureed/soft diet.  Even if Dr. Wright did tell the plaintiff that he was going to order a pureed/soft diet for him, but then neglected to submit the order, the plaintiff does not allege that he complained directly to Dr. Wright after December 20, 2007.  The plaintiff filed an Inmate Request on December 20, 2007 and an Emergency Health Grievance about the diet on December 23, 2007, but there is no evidence that Dr. Wright was aware of the request or grievance or responded to either one. Furthermore, Dr. Cuevas examined the plaintiff on December 26, 2007, and with the approval of Dr. Wright submitted a request to the Food Services Department for a pureed diet for the

18

plaintiff.

Thus, the plaintiff has not demonstrated that Dr. Wright knew that the plaintiff had not received the requested diet and intentionally disregarded that knowledge or refused to correct the mistake.  The court concludes that the plaintiff has not provided sufficient evidence that Dr. Wright was deliberately indifferent to his serious dental needs.  The motion for summary judgment is granted with respect to the claims against Dr. Wright.

### 3.      Dr. Shafer

The plaintiff alleges that on November 15, 2007, Northern prison officials transported him to UCONN to have his two wisdom teeth extracted.  When he arrived, he sat in the waiting area until 3:30 p.m. and then a correctional officer who had transported the plaintiff to UCONN informed him that he would not be seen by a dentist that day.

Dr. Shafer avers that he and Dr. Dmitry Peyshakov examined the plaintiff on November 15, 2007, and determined that the plaintiff's wisdom teeth, numbers sixteen and seventeen, should be extracted on a non-emergency basis.   He did not perform the extractions that day because the scheduling of such a procedure is determined by the University of Connecticut Correctional Managed Health Care.  Dr. Shafer's review of the plaintiff's medical records did not reflect that the plaintiff's teeth were causing him pain.   Dr. Shafer supervised the extraction of the plaintiff's wisdom teeth, numbers sixteen and seventeen, on January 17, 2008.

The plaintiff claims that Dr. Shafer was scheduled to extract his wisdom teeth on November 15, 2007, and failed to do so.  In addition, he failed to take any action to ensure that the extractions would be performed shortly after November 15, 2007.

It is apparent that there is a dispute concerning whether Dr. Shafer actually examined the

plaintiff on November 15, 2007.   The handwriting on the November 15, 2007, consultation form appears to be that of Dr. Peyshakov and not Dr. Shafer.   Dr. Shafer's handwriting can be viewed on the consultation form documenting the extraction of the plaintiff's teeth on January 17, 2008.

Whether or not Dr. Shafer actually examined the plaintiff on November 15, 2007, it is undisputed that Dr. Shafer did not extract the plaintiff's teeth on November 15, 2007.   Dr. Shafer avers that surgical extraction of the plaintiff's teeth had not been scheduled by Correctional Managed Health Care.   The evidence submitted by the defendants, however, shows that Dental Services Coordinator Dr. Toro had approved the surgical extraction of the plaintiff's teeth on August 17, 2007.   The consultation form containing notes by Dr. Peyshakov and signed by him on November 5, 2007, indicated that the CMHC URC was requesting oral surgery for dental extractions at UCONN Outpatient Department.   Thus, it is unclear why Dr. Shafer would think the procedure had not been approved and scheduled.   Furthermore, Dr. Peyshakov indicated that the procedure would be performed on November 15, 2007.

Dr. Shafer argues that even if the procedure had been scheduled for November 15, 2007, the fact that it was not performed on that date does not constitute deliberate indifference because the plaintiff's condition did not require immediate or emergency surgery.   There is an issue of fact whether Dr. Shafer in fact examined the plaintiff.   In addition, the notes on the consultation form for November 15, 2007, which appear to be Dr. Peyshakov's, do not indicate whether the plaintiff's condition required immediate surgery, but do indicate that the plaintiff presented with pain in the area of the impacted wisdom tooth and that the surgical extractions would be performed that day.

Furthermore, Dr. Shafer avers that his review of the medical records did not reveal that

plaintiff's teeth were causing him pain.  That conclusion, however, is not consistent with the

plaintiff's medical records, which include multiple references to the plaintiff's complaints of

pain.  Furthermore, at the time of the plaintiff's appointment at UCONN in November 2007, the

plaintiff had been without any pain medication since his visit three months earlier with Dr.

Cuevas.

Thus, issues of material fact preclude a determination whether Dr. Shafer was deliberately

indifferent to the plaintiff's serious dental needs when he failed to extract the plaintiff's two

wisdom teeth on November 15, 2007.  *See Berry v. Wright*, No. 04-CV-0074(Sr), 201 WL

231616, at *5 (W.D.N.Y. Jan. 24, 2011) ("'Although delay in providing a prisoner with dental

treatment, standing alone, does not constitute an [E]ighth [A]mendment violation,' a prisoner can

state a claim of deliberate medical indifference under section 1983 if 'the delay was deliberate

and that it caused [him] to suffer unnecessary and wanton infliction of pain.'" (quoting *Hunt v.

Dental Dep't*, 865 F.2d 198, 201 (9th Cir. 1989) (internal quotation omitted)).  The motion for

summary judgment is denied with respect to defendant Shafer.

### 4.    Dr. Cuevas

There is no dispute that Dr. Cuevas examined the plaintiff on August 14, 2007, and noted

the plaintiff's complaints of pain and swelling in the lower left area of the plaintiff's jaw near

tooth number seventeen.   Dr. Cuevas observed that tooth number sixteen was hitting the soft

tissue of the tooth number seventeen, which was impacted and causing the plaintiff pain.  Dr.

Cuevas recommended that tooth number sixteen and tooth number seventeen be extracted.   An

oral surgeon, Dr. Dupont, examined the plaintiff on August 15, 2007, confirmed Dr. Cuevas's

recommendation and directed Dr. Cuevas to submit a request to the Utilization Review

21

Committee for the extraction of both teeth at UCONN.   Dr. Cuevas submitted a request to the URC.  On August 17, 2007, the URC approved the request for surgical extraction of both teeth at UCONN.

The plaintiff's medical and dental records reflect no orders by Dr. Cuevas for pain medication for the plaintiff from August 14, 2007 through November 15, 2007, when he first went to UCONN.  Dr. Wright prescribed pain medication for five days after November 15, 2007 and then again on December 20, 2007 for three weeks.  There are no orders for pain medication from November 20, 2007 to December 20, 2007.

The plaintiff has averred that during the time period from November 15, 2007 and January 17, 2008, he made complaints to Dr. Cuevas regarding the pain in his teeth and gums as well as the severe swelling of his gums making it difficult for him to eat.  The only treatment that Dr. Cuevas provided to the plaintiff  was an order for a pureed diet on December 26, 2007.  Dr. Cuevas has averred that based on his examinations, the plaintiff was not suffering from severe pain or swelling and his condition was not an emergency.  He concedes that if he had observed severe pain or swelling in the plaintiff's mouth, he would have sent the plaintiff to UCONN on an emergency basis.  Dr. Cuevas also suggests in his affidavit that either he or another medical professional treated the plaintiff's non-severe, continuing pain with Motrin.  As stated above, the plaintiff's medical records do not reflect any prescription for pain medication by Dr. Cuevas.

The court concludes that there are genuine issues of material fact regarding whether the plaintiff suffered from severe pain or swelling requiring immediate surgical extraction of the two wisdom teeth during the time period of Dr. Cuevas's treatment of the plaintiff, particularly from November 16, 2007 to January 16, 2008.  In addition, there are issues of fact whether the plaintiff

made Dr. Cuevas aware of the pain he was experiencing and whether Dr. Cuevas was deliberately indifferent to those complaints by failing to prescribe any pain medication to the plaintiff.  Accordingly, the motion for summary judgment is denied with respect to the claims against Dr. Cuevas.

## IV.   Conclusion

The Motion for Summary Judgment [**Doc. No. 29**] is **GRANTED** with respect to the claims of deliberate indifference to dental needs against defendants McGill, Light, Pillai, Newitter and Wright, and **DENIED** with respect to defendants Cuevas, Shafer, Sanders and Gilbert.  The claims against defendant Cheryl A. Schreindorfer are **DISMISSED** pursuant to Rule 25(a), Fed. R. Civ. P.

**SO ORDERED** this 27th day of March 2012, at Bridgeport, Connecticut.


  /s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge